IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION- CINCINNATI

08 FEB -5 PM 1:47

| | |
|---|---|
| eGIX, Inc.<br>11550 North Meridian Street, 5th Floor<br>Carmel, IN 46032 | Case No. **1:08 CV 0083** |
| Plaintiff, | JUDGE **J. DLOTT** |
| v. | |
| The Malibu Group, LLC<br>10101 Alliance Road, Suite 190<br>Cincinnati, OH 45442 | |
| Defendant. | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Now comes Plaintiff, eGIX, Inc., by and through counsel, and for its Complaint for Declaratory Judgment against Defendant, The Malibu Group, states as follows:

1. Plaintiff, eGIX Inc. is an Indiana corporation with its principle place of business in Carmel, Indiana.

2. Defendant, The Malibu Group, LLC is a company formed under the laws of the State of Ohio with its principle place of business in Cincinnati, Ohio.

3. At issue in this case is a "Referral Agreement," which purports to be a contract between the parties, entered into and governed by the laws of the State of Ohio. A true and accurate copy of the "Referral Agreement" that is subject of this Declaratory Judgment action is attached hereto as Exhibit A. Said Agreement was drafted by Defendant The Malibu Group.

4. Jurisdiction is proper pursuant to 28 U.S.C. § 1332 as there is complete diversity of

322920

citizenship and the amount at issue is in excess of $75,000.00.

## FACTUAL BACKGROUND

5. Plaintiff, eGIX, Inc. entered into the attached "Referral Agreement" with The Malibu Group, LLC on or about August 17, 2006. The Agreement stated in pertinent part as follows:

> "eGIX Communications ("eGIX") is interested in pursuing a strategic relationship that will lead to eGIX merging or being acquired by Cincinnati Bell Telephone. The Malibu Group, LLC, in Cincinnati, Ohio ("Malibu") has been able to identify and introduce eGIX to Cincinnati Bell Telephone.
> * * * *
> If Cincinnati Bell Telephone should acquire all or any portion of eGIX, eGIX will pay Malibu a success fee, in cash at closing, equal to one and one-fourth percent (1.25%) of the purchase price." (Exhibit A).

6. An employee of The Malibu Group introduced Mike Herrmann of Cincinnati Bell to eGIX after the parties executed the Referral Agreement. The introduction consisted of some preliminary conversations with Mr. Herrmann, Director of Business Development for Cincinnati Bell, but that introduction did not lead to any business relationship between Cincinnati Bell and eGIX. In addition, there was no additional contact with eGIX by Defendant Malibu after the initial introduction, except a cursory notice of the departure of an employee of Malibu.

7. Mr. Herrmann is a well-respected member of the Cincinnati Bell business development team, but Mr. Herrmann was not tasked with mergers and acquisitions responsibilities with Cincinnati Bell nor was Mr. Herrmann a part of Cincinnati Bell Any Distance, Inc. ("CBAD"), the competitive local exchange carrier group, which is affiliated with Cincinnati Bell, but a separate and distinct corporation.

8. After it became apparent to eGIX management that Cincinnati Bell was not interested in the possibility of making a purchase of either the stock or the assets of eGIX, and without any contact or assistance from Defendant Malibu, eGIX came to the conclusion that Defendant Malibu's introduction would not result in an agreement or a business relationship between Cincinnati Bell and

322920            -2-

eGIX, and that eGIX needed to explore additional strategic options.

9. Because Defendant Malibu's efforts had not been successful, eGIX interviewed and considered a number of investment banking firms, eventually hiring Waller Capital as its third-party investment banker, to investigate eGIX's strategic options including the possibility of raising sufficient capital to make eGIX a stand alone company, selling eGIX through a process or trying to find an equal company for a merger possibility. Waller and eGIX created a "teaser" which was distributed to approximately one hundred (100) companies. A small number of those companies responded to the "teaser" and eGIX ultimately sent approximately forty (40) information booklets to parties that had expressed interest in various aspects of a relationship with eGIX. Of that number, seven (7) companies made preliminary non-binding expressions of interest.

10. When Cincinnati Bell received the "teaser" from Waller, Cincinnati Bell was not interested in any of the offerings. Instead, the "teaser" was referred to another company, Cincinnati Bell Any Distance, Inc. ("CBAD") and its Vice President/General Manager, Shane Brown. CBAD, under Mr. Brown's direction, was one of the initial parties that responded to the "teaser."

11. The preliminary interest of CBAD was well below offerings from other parties. Waller Capital then contacted CBAD and informed it that its offering was so low that it was no longer to be included in the process. CBAD requested the opportunity to resubmit, to increase its expression to the level of other participants. Defendant Malibu had no contact with Waller, eGIX or CBAD during this process and did not participate in the effort to increase the interest of CBAD.

12. Based upon the efforts of Waller, eGIX and CBAD ultimately negotiated a final agreement in late 2007. The deal between eGIX and CBAD was ultimately closed in February of 2008, with Shane Brown at the helm of the transaction for CBAD.

13. Defendant The Malibu Group was not successful in brokering a deal between

Cincinnati Bell and eGIX, and had no involvement whatsoever in the transaction between eGIX and CBAD.

14. The Malibu Group now claims entitlement to the "success fee" referred to the in the Referral Agreement attached hereto as Exhibit A, claimed to be approximately $225,000.00. Even though The Malibu Group did not perform any of the services required by the "Referral Agreement," Malibu now claims entitlement to the 1.25% "success fee" based upon the sale of the assets of eGIX to CBAD.

## DECLARATORY JUDGMENT

### COUNT I: ILLUSORY CONTRACT/LACK OF CONSIDERATION

15. Plaintiff hereby incorporates by reference Paragraphs 1 through 14 of this Complaint as if fully set forth herein.

16. The "Referral Agreement" drafted by The Malibu Group and signed by the parties is unenforceable as a matter of law as it is illusory and not supported by consideration on the part of The Malibu Group.

17. The Malibu Group claims to be entitled to a "success fee" even in the event its efforts were not successful and did not lead to the sale of eGIX, Inc. to Cincinnati Bell.

18. Pursuant to the terms of the contract drafted by The Malibu Group, The Malibu Group claims to be entitled to the "success fee" without any consideration or performance on its part. In other words, the "Referral Agreement" is illusory in that it purports to entitle The Malibu Group to compensation even in the event that the involvement of The Malibu Group played no role whatsoever in a decision by Cincinnati Bell to purchase eGIX, Inc. In fact, the "Referral Agreement" purports to entitle The Malibu Group to a "success fee" even when eGIX hired a third-party, Waller Capital, and it was the efforts of Waller Capital, and not The Malibu Group, which ultimately led

to the purchase of eGIX by CBAD, and not Cincinnati Bell.

19. Based upon the above, the "Referral Agreement" is illusory, not supported by consideration, and is, thus, unenforceable as a matter of law.

## COUNT II: UNCONSCIONABILITY

20. Plaintiff hereby incorporates by reference Paragraphs 1 through 19 as if fully set forth herein.

21. The "Referral Agreement" at issue is substantively unconscionable as its terms are not commercially reasonable.

22. Specifically, the "Referral Agreement" drafted by The Malibu Group purports to entitle The Malibu Group to compensation whether or not its efforts ultimately led to the sale of eGIX to Cincinnati Bell. In fact, Defendant Malibu currently claims entitlement to the success fee despite the fact that it was the efforts of Waller Capital, and not Malibu, that led to the sale and that the sale of the assets of eGIX was to CBAD and not Cincinnati Bell, as referred to in the agreement.

23. Any contract, such as the "Referral Agreement" referred to in this case, which requires payment even in the event of the non-performance of one party is not commercially reasonable, and is, thus, substantively unconscionable and unenforceable. The "Referral Agreement" also contains no time limit as to when parties are to perform. Such an open-ended and one-sided contract is unenforceable as a matter of law.

24. In addition, the "Referral Agreement" at issue in this case is procedurally unconscionable as its terms were not negotiated, are impermissibly one-sided, and the relative bargaining power of the parties was such as to render the entering into the Agreement procedurally unconscionable and unenforceable as a matter of law.

## COUNT III: NONPERFORMANCE (IN THE ALTERNATIVE)

25. Plaintiff hereby incorporates by reference Paragraphs 1 through 24 as if fully set forth herein.

26. In the alternative, if this Court determines that the "Referral Agreement" is, in fact, enforceable under Ohio law, Defendant Malibu is still not entitled to the "success fee" referred to in the Agreement.

27. The "Referral Agreement" drafted by Defendant Malibu states that it is entitled to a "success fee" should the referral of eGIX to Cincinnati Bell result in Cincinnati Bell purchasing the assets of Plaintiff eGIX.

28. Cincinnati Bell did NOT, in fact, purchase the assets of eGIX. Defendant Malibu is not entitled to its "success fee" as its efforts were not "successful" in referring eGIX to Cincinnati Bell. Instead, eGIX was forced to hire a third party, Waller Capital, to facilitate the sale. It was the efforts of Waller Capital, and not The Malibu Group, that lead to the purchase of eGIX by CBAD.

29. Since Defendant Malibu did not substantially or in any manner perform pursuant to the "Referral Agreement," it is not entitled to the "success fee" referred to therein.

**WHEREFORE,** Plaintiff, eGIX, Inc. respectfully requests this Honorable Court to enter Declaratory Judgment in its favor declaring that the "Referral Agreement" attached hereto is unenforceable as a matter of law as it is illusory, not supported by consideration and both procedurally and substantively unconscionable. In the alternative, Plaintiff eGIX requests this Court to enter an order declaring that Defendant, The Malibu Group, did not substantially perform as required in the Agreement and is, thus, not entitled to a "success fee." Plaintiff, eGIX, Inc. further

requests this Court enter an order awarding it compensatory damages, costs and attorney's fees so wrongfully incurred.

                Respectfully submitted,

                _____
                **CHRISTINA L. CORL** (0067869)
                Crabbe, Brown & James, LLP
                500 S. Front Street, Suite 1200
                Columbus, Ohio 43215
                Telephone: (614) 229-4562
                Facsimile: (614) 229-4559
                Email: CCorl@cbjlawyers.com
                *Attorney for Plaintiff, eGIX, Inc.*